UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-80112-CIV-MARRA

AMERISURE INSURANCE COMPANY
    a foreign corporation,

    Plaintiff,

v

ORANGE & BLUE CONSTRUCTION, INC.,
A Florida corporation, EPOCH PROPERTIES, INC.,
A Florida corporation, CL&B CONTRACTING, INC.,
A Florida corporation, SANDI CONSTRUCTIONS, INC.,
A Florida corporation, and MARIA ELENA SERVELLON
TEJEDA, as Personal Representative of the Estate of
JOSE TEJEDA, deceased,

    Defendants.
_____/

**OPINION AND ORDER**

    THIS CAUSE is before the Court upon Plaintiff Amerisure Insurance Company's Motion for Summary Judgment as to its Complaint for Declaratory Judgment and Epoch's Counterclaim for Declaratory Judgment for Coverage [DE 41], and Defendant Epoch Properties, Inc.'s Dispositive Motion for Summary Judgment and Motion for Stay [DE 50]. The motions are fully briefed and ripe for review. The Court has reviewed all the motion papers and exhibits, the entire file in this case, and is otherwise duly advised in the premises.

1

## I. BACKGROUND[1]

Epoch Properties, Inc. ("Epoch") was the General Contractor on a project called Portofino at Lakes Laguna [DE 42, 3 ¶16, DE 49, 2 ¶1]. Epoch entered into a subcontract for part of the work with Orange & Blue Construction, Inc. ("Orange & Blue") [DE 42, 3 ¶17, DE 49, 2 ¶1]. Orange & Blue then sub-contracted most of its work at the site to CL & B Contracting, Inc. ("CL &B"), which then further sub-contracted the work to Sandi Construction, Inc. ("Sandi") [DE 42, 3 ¶¶ 18-19, DE 49, 4 ¶7].

Jose Tejeda, who was working as a laborer for Sandi at the site, sustained injuries from a fall which led to his death [DE 42, 3 ¶20, DE 49, 4 ¶8]. An action seeking damages arising out of this incident was commenced against Epoch, CL & B and Sandi by the Representative of Mr. Tejeda's estate in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County under Case No. 50 2008 CA 006953 ("underlying action")[DE 42, 2 ¶9, ¶12, DE 49, 5 ¶9]. Orange & Blue was not named as a defendant in the underlying action [DE 42-2].

The Fourth Amended Complaint in the underlying action contains two Counts against Epoch. *Id*. The first, for negligence, alleges that Epoch breached its duty to provide and maintain a reasonably safe workplace. *Id*. at ¶31. The heading of the second count is named "Against Epoch for Intentional Tort" and alleges that Epoch acted in a manner which was virtually certain to cause serious injury or death. *Id*. at ¶40.

Epoch's contract with the owner of the property gave it ultimate responsibility for safety at the job site [DE 42-3 24-5]; however, in Epoch's Subcontract Agreement with Orange & Blue,

---

[1]The facts set forth herein are taken from the motion papers and exhibits appended thereto. All facts are construed in the light most favorable to the non-movant in each of the motions before the Court.

the risk of potential injuries on the job site was re-allocated by these parties to Orange & Blue to the extent that such injuries might arise out of Orange & Blue's portion of the overall project. Orange & Blue assumed responsibility for supervision and safety matters [DE 42-3, 7, ¶8, 11, ¶17], and was required to report any unsafe conditions to Epoch [DE 42-3, 11, ¶16(b)].

The subcontract required Orange & Blue to purchase Commercial General Liability Insurance covering, in relevant part, personal injury and bodily injury (including wrongful death) and required that Epoch be named as an additional insured on this policy [DE 42-3, 10, ¶15(a)(ii) and (d)]. In compliance with this requirement, Epoch became an additional insured on Orange & Blue's policy with Amerisure [DE 42-1]. As an additional insured, Epoch tendered its defense in the underlying action to Amerisure [DE 42, 4, ¶ 21], and Amerisure agreed to provide Epoch with a defense subject to a full reservation of its rights [DE 42, 4, ¶22, DE 42-4, DE 42-5].

## II.  THE AMERISURE POLICY

Amerisure's Commercial General Liability policy GL 2009112020005 [DE 42-1] provides in relevant part:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>    **a**.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
>    . . .
>
>    **b**.  This insurance applies to "bodily injury" and "property damage" only if:

>    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>    **(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .

[DE 42-1,7].

The following exclusions in the policy are at issue in this case:

>    **2. Exclusions**
>
>    This insurance does not apply to:
>
>    **a. Expected Or Intended Injury**
>
>    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
>    **b. Contractual Liability**
>
>    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
>    **(1)** That the insured would have in the absence of the contract or agreement; or
>
>    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement .
>
>    . . .
>
>    **d. Workers' Compensation And Similar Laws**
>
>    Any obligation of the insured under a workers'compensation, disability benefits or unemployment compensation law or any similar law.
>
>    **e. Employer's Liability**
>
>    "Bodily injury" to:
>
>    **(1)** An "employee" of the insured arising out of and in the course of:

>    **(a)** Employment by the insured; or
>
>    **(b)** Performing duties related to the conduct of the insured's business . . . .
>
> This exclusion applies:
>
>    **(1)** Whether the insured may be liable as an employer or in any other capacity; and
>
>    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
>    This exclusion does not apply to liability assumed by the insured under an "insured contract".

[DE 42-1, 8].

> The policy also contains the following relevant definitions:
>
> " Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[DE 42-1, 19, ¶3].

> " Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[DE 42-1, 20, ¶13].

>    "Insured contract" means:
>
> **f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

[DE 42-1, 29].

> "Employee" includes a "leased worker."  "Employee" does not include a "temporary worker."

[DE 42-1, 19, ¶5].

The Contractor's Blanket Additional Insured Endorsement, CG 70 48 03 04, states, in relevant part:

The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability arising out of: . . .

    (b) Your ongoing operations performed for that additional insured, unless the written contract or agreement or the certificate of insurance requires "your work" coverage (or wording to the same effect) in which case the coverage provided shall extend to "your work" for that additional insured.

[DE 42-1, 57].

Amerisure asserted in its Complaint: "Pursuant to the CG 7048 0304 Contractors Blanket Additional Insured Endorsement contained in the POLICY, EPOCH is considered an 'additional insured'." [DE 1, 5, ¶27].

### III.  CONTENTIONS OF THE PARTIES

Amerisure seeks summary judgment in this declaratory judgment action holding that Amerisure has no duty to defend or indemnify Epoch for the claims and damages alleged against it in the underlying action [DE 41, 18]. Amerisure argues that the claim against Epoch for intentional tort is not a covered "occurrence" under the policy [DE 41, 5]. Amerisure also contends that Exclusion 2.b. *supra* bars coverage because Epoch is being sued for its own acts and omissions in the underlying action and not for the vicarious tort liability of Amerisure's named insured, Orange & Blue [DE 41, 8-11]. Amerisure also relies upon Exclusions 2.d. and 2.e., arguing that Epoch was a "statutory employer" of Jose Tejeda under Florida's Workers Compensation Act, and, as such, these exclusions bar coverage under the policy [DE 41, 11-15].

Epoch seeks partial summary judgment as to its counterclaim for declaratory judgment holding that Amerisure has a duty to defend it in the underlying action, arguing that although Amerisure may not be obliged to defend the intentional tort claim, it must defend the entire case due to the negligence claim [DE 49, 7-9]. Epoch further asserts that the claim in the underlying action for intentional tort is ambiguous and, therefore, Amerisure has a duty to defend that claim as well [DE 49, 9-10].

Epoch posits that its contract with Orange & Blue is an "insured contract" under the policy, and it is being sued for Orange & Blue's acts and omissions [DE 49, 10-13]. Epoch looks to the Additional Insured Endorsement to support its position [DE 13-17].

As to the issue of Amerisure's obligation to indemnify it, Epoch argues that it is premature to make this determination [DE 19-20] and requests the Court to stay this portion of the action until the issue of whether Epoch was a statutory employer of Jose Tejeda is determined in the underlying action [DE 49, 17-19]. In the alternative, should the Court consider whether Mr. Tejeda is Epoch's "employee" or "statutory employee", Epoch contends that there is no basis for denying coverage under the Employer's Liability or Workers' Compensation exclusions.

### IV.  SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Whether an insurer has a duty to defend "depends solely on the facts and legal theories alleged in the pleadings and the claims against the insured." *Lawyers Title Insurance Corp. v. JDC(AM.) Corp.,* 52 F.3d 1575, 1580 (11th Cir. 1985). The competing motions for summary judgment demonstrate that there are no material facts in dispute, and, therefore, this

case is ripe for summary judgment.

There is no dispute among the parties that Florida law applies to this insurance coverage case, which is before the Court pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the parties. Under Florida's *lex loci contractus* test, the Court agrees that Florida law applies.  *See, e.g., Lefarge Corp. v. Travelers Indemnity,* 118 F.3d 1511 (11th Cir. 1997); *Nova Cas. Co. v. Waserstein,* 424 F. Supp. 2d 1325 (S.D. Fla. 2006); *Lumberman's Mut. Cas. Co. v. August,* 530 So.2d 293 (Fla. 1998). Florida law applicable to insurance coverage disputes provides that

> [t]he duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured. . . .The duty arises when the relevant pleadings allege facts that "fairly and potentially bring the suit within policy coverage." . . ." '[T]he "actual facts" of the situation are not pertinent.' ". . . ("When the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend.") Thus, the duty to defend is broader than the duty to indemnify in the sense that the insurer must defend even if facts alleged are actually untrue or legal theories unsound. . . .  If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured. . . .

*Lawyers Title Ins. Corp.,* 52 F.3d at 1580-81 (citations omitted).

## VI.  DISCUSSION
**A.** **The Intentional Tort Claim**

Amerisure contends that Count II of the Fourth Amended Complaint in the underlying action, which is described as "Against Epoch for Intentional Tort" [DE 42-2, 8-11], is not an "occurrence" under the policy [DE 41, 5-6]. It further contends that Count II is excluded from coverage under Exclusion 2.a., the "expected or intended injury" exclusion [DE 41, 6-8].

Inasmuch as Count I of the Fourth Amended Complaint sounds in negligence, which is a

8

covered "occurrence" [DE 42-1, 20, ¶13, DE 42-1, 7], the Court finds it unnecessary to address Amerisure's position regarding Count II, as well as Epoch's arguments relative thereto. It is clear under Florida law that "[i]f the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *IDC Construction, LLC v. Admiral Ins. Co.,* 339 F. Supp. 2d 1342, 1349 (S.D. Fla. 2004), citing *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1306-07 (Fla. 1st DCA 1992). Therefore, given that Amerisure has a duty to defend Epoch as to the allegations of negligence in the underlying action, barring an exclusion that negates Amerisure's obligation to defend Epoch regarding the negligence claim, Amerisure would have to defend Epoch as to the entire Fourth Amended Complaint.

**B.     The Contractual Liability Exclusion**

Amerisure next contends that Exclusion 2.b. of the policy bars coverage for Epoch in the underlying action [DE 41, 8-11]. This provision excludes:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement .

 . . .
[DE 42-1,8].

> "Insured contract" means:
>
> **f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

[DE 42-1, 29].

Amerisure argues that this exclusion bars coverage since Epoch is being sued for its own acts and omissions in the underlying action, and not vicariously for the tort liability of Amerisure's insured, Orange & Blue. Amerisure relies upon *United Rentals, Inc. v. Mid-Continent Cas. Co.,* 843 F. Supp. 2d 1309 (S.D. Fla. 2012) and this Court's decision in *Mid-Continent Cas. Co. v. Const. Servs. & Consultants, Inc.,* No. 06-CV-80922, 2008 WL 896221 (S.D. Fla. Mar. 31, 2008).

In both of these cases, as in the instant case, the allegations against the additional insured were based upon its own actions and omissions, and not upon the actions and omissions of the primary insured. Based upon the particular facts of those cases, and the specific language of the policies at issue in those two cases, summary judgment was granted to the insurer. The facts of the instant case, and the particular language of the policy at issue herein, however, are different from these cases in significant ways that render these two cases inapposite.

Under the policy in *Mid-Continent*, in order for a company to be an additional insured, the liability at issue had to be "directly attributable" to the primary insured's performance of its work for the putative additional insured. Since the allegations against the putative additional insured were for its own negligence, and not for the acts and omissions of the primary insured, this Court held that there was no coverage. *Id*. Furthermore, the additional insured amendment only applied when the primary insured had agreed by a written "insured contract" to designate the other company as an additional insured. *Id*. Therefore, in *Mid-Continent*, the existence of an "insured contract" was a condition precedent to attaining additional insured status.

In *United Rentals, Inc.*, 843 F. Supp. 2d 1309 (S.D. Fla. 2012), the primary policy had an additional insured clause that was similar to that in *Mid-Continent*. *Id*. at 1312 n.5. In defining an "insured contract", the language required that the injury be "caused, in whole or in part" by the primary insured or those acting on its behalf. *Id*. at 1312 n.6. The excess policy in *United Rentals, Inc.* included as an insured, "[a]ny person or organization for whom you have agreed in writing prior to any occurrence or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf or facilities owned or used by you." 843 F. Supp. 2d at 1314. The excess policy used identical language as the primary policy to define "insured contract". *Id.* at 1314 n.8. The Court held that under both of these policies, additional insured coverage existed solely for vicarious liability. *Id.* at 1314.

Here, the Amerisure policy provides that a company "is only an additional insured with respect to liability arising out of: . . . [the primary insured's] ongoing operations performed for that additional insured . . . ." [DE 42-1, 57]. The Amerisure policy does not require that there be an "insured contract" for a company to be an additional insured.

It has been held that where, as here, a policy uses the phrase "liability arising out of the operations" of a named insured, it is not necessary for the named insured's acts to have "caused" the accident. It is sufficient if the injured person was present at the scene of the accident in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured. *See, e.g.,Mid-Continent Cas. Co. v. Swift Energy Co.,*206 F.3d 487 (5th Cir. 2000). In *Container Corp. of America v. Maryland Cas. Co.,* 707 So.2d 733 (Fla. 1998), the Florida Supreme Court marshaled cases from other jurisdictions discussing additional insured language similar to the language in the Amerisure policy at issue here, and

11

concluded that in the absence of clear policy language limiting coverage to vicarious liability, the additional insured was entitled to coverage for its own negligence. *Id.* at 736.

All allegations in the Fourth Amended Complaint in the underlying action refer to the job site of the Porto Fino Apartments [DE 42-2]. Amerisure, in its Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("Statement of Undisputed Facts"), [DE 42], states:

> Defendant Epoch was the general contractor for the construction of an apartment complex Portofino Lakes of Laguna, Phase II project (hereinafter "Project"). . . .[DE 42, 3, ¶16]. Epoch then subcontracted the building shell of the construction project to Orange and Blue. . . .[*Id.*, ¶17]. Orange and Blue sub-subcontracted most of its work at the construction project to CL & B. . . .[*Id.,*¶18]. CL & B sub-sub-subcontracted its work at the construction project to Sandi. . . .[*Id.*, ¶19]. On the date of the underlying accident in question, December 20, 2005, Jose Tejeda was employed as a laborer for Sandi, and **while in the course and scope of performing the subcontract work for Sandi at the construction project, sustained injuries from a fall which ultimately resulted in his death.** [*Id.*, ¶20, Emphasis Added].

Given these undisputed facts, Amerisure cannot contend that the liability at issue in this case did not arise out of the operations of its insured, Orange & Blue, and it does not so contend. In fact, Amerisure conceded in its Complaint that Epoch was an additional insured under the Orange & Blue policy [DE 1, 5, ¶27].

Having found that Epoch was an additional insured under the Orange & Blue policy with Amerisure does not end our inquiry. It still must be determined whether any of the policy exclusions apply.

The Contractual Liability Exclusion in 2.b. does not apply here for several reasons. First,

the Subcontract Agreement between Epoch and Orange & Blue contains no provisions under which Orange & Blue assumes Epoch's liability. The indemnity provision in the Agreement states that the only indemnified parties are the "Owner, all subsidiary or affiliated companies of Owner, and all employees, stockholders, officers, partners and directors or any of such parties and their respective heirs, executors, administrators, successors and assigns . . . and Owner's lender(s)." [DE 42-3, 13]. Nor is Epoch, as an additional insured, being sued based upon the liability it assumed in its contract with the owner of the Portofino at Lakes Laguna. Put simply, this exclusion has no relevance to this case.

**C.     Epoch's Status as a "Statutory Employer".**

The Court rejects Epoch's request that it stay its evaluation of Epoch's status as a "statutory employer" pending resolution of the underlying action [DE 49, 17-19]. Epoch argues that whether or not Tejeda would be properly considered a "statutory employee" is a disputed question of fact in the underlying action. *Id*. at 17. Epoch states that its request for a determination of Mr. Tejeda's status has twice been rejected by the Palm Beach Circuit Court. *Id*. at 22. Epoch directs the Court's attention to an attached Order from the Palm Beach Circuit Court. All this Order says, however, is that Epoch's Motion for Summary Judgment is denied "for reasons stated on the record." [DE 49-2]. The record was not supplied to this Court, although Epoch could have easily done so.

Amerisure, in its reply papers, disagrees with Epoch's description of what occurred relative to the Palm Beach Circuit Court's decision on Epoch's Motion for Summary Judgment, noting: "The state court judge found that there was a factual issue as to whether Tejeda's claim would be barred based upon worker's compensation immunity. However, there was no factual

13

dispute that Tejeda was an employee of Sandi and a 'statutory employee' of Epoch." [DE 58, 8]. Amerisure also did not provide this Court with any of the papers from the underlying action discussing this issue.

Epoch points to a related case in this court, *Commerce & Industry Ins. Co. v. Sandi Construction, Inc.,* 2011 WL 4738155 (S.D. Fla.), in support of its position that this Court should not rule on this issue. *Commerce & Industry Ins. Co.* was a declaratory judgment action against all the same defendants in the instant case. At issue was whether both parts of a Workers' Compensation and Employer's Liability Insurance Policy were covered by a Florida Workers' Compensation statute or whether a Florida statute permitting an insurer to deny recovery and void a policy if the insured procures the policy based upon fraudulent statements applied to the Employer's Liability portion of the policy.

Although completely unrelated to this issue, Epoch asked the court in *Commerce & Industry Ins. Co.* for "an affirmative determination and declaration . . . that Mr. Tejeda was an employee and therefore a beneficiary of the statutory scheme of workers' compensation . . .". *Id*. at 5. The Court declined to do so, because "Defendant Tejeda's rights and her deceased husband's status under Florida's worker's compensation law **are not a matter before this Court**, but instead those determinations are the province of the court in Palm Beach County." *Id*. (Emphasis added).

In the instant case, whether or not Epoch was a "statutory employer" of Mr. Tejeda is not only before this Court, but, as noted below, is determinative of the coverage issue. This Court's decision to rule on this issue is not, therefore, inconsistent with the court's ruling in *Commerce & Industry Ins. Co.*

Epoch requests the stay from this Court to prevent the possibility of having this Court and the State Court enter inconsistent rulings [DE 49, 18]. There is actually a greater chance that inconsistent rulings will result if this Court does not rule on the issue at this time. All of the parties in the underlying action are named defendants herein.  Plaintiff in the underlying action answered the complaint in the instant action [DE 20]. This Court's ruling on the issue of whether Epoch was a "statutory employer" of Mr. Tejeda should, therefore, collaterally estop the parties from re-litigating the issue in the underlying action. *See,e.g.,Southeastern Fidelity Ins. Co.,*515 So.2d 240 (Fla. App. 4 Dist. 1987).[2]

Conversely, if this Court stays its decision on this issue; Epoch is found not to be a "statutory employer" in the underlying action; and it is determined that Epoch's and Amerisure's interests were antagonistic in the underlying action; Amerisure would not be collaterally estopped before this Court from re-litigating the issue of whether Epoch is a "statutory employer". *See State Farm Mutual Automobile Ins. Co. v. Brown,* 767 F. Supp. 1151 (S.D. Fla. 1991) (Insurer in a declaratory judgment action in Federal Court was not collaterally estopped from challenging a State Court Judge's findings of fact in an underlying action where the insurer and the insured had antagonistic interests in the State Court case).

---

[2] "Collateral estoppel is a complete defense to the relitigation of an issue when there is an identity of parties or their privies, an identity of issues, and an actual litigation thereof in the first suit. . . .The principal involved in collateral estoppel is that:

> [a]ny right, fact or matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose or subject-matter of the two suits is the same or not. . . .

*Southeastern Fidelity Ins. Co.,* 515 So.2d at 242.

Amerisure has a right to have this Court rule on the matter before it. Otherwise, Amerisure will have to incur the expense of defending the underlying action when it is clear, as noted below, that based upon the plain meaning of the policy and the relevant case law, it has no obligation to do so.

**D.     The Workers' Compensation and Employer's Liability Exclusions.**

Amerisure contends that Exclusions 2.d. and 2.e. bar coverage for Epoch in the underlying action [DE 41, 11-15]. Section 2.d. excludes from coverage:

> **d. Workers' Compensation And Similar Laws**
>
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

[DE 42-1, 8]. Section 2.e. excludes from coverage:

> **e. Employer's Liability**
>
> "Bodily injury" to:
>
> **(1)** An "employee" of the insured arising out of and in the course of:
>
> **(a)** Employment by the insured; or
>
> **(b)** Performing duties related to the conduct of the insured's business . . . .
>
> This exclusion applies:
>
> **(1)** Whether the insured may be liable as an employer or in any other capacity; and
>
> **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract".[3]

---

[3] Epoch argues that Exclusion 2.e. is inapplicable due to the language at the end stating: "This exclusion does not apply to liability assumed by the insured under an 'insured contract'".

[DE 42-1, 8].

The policy also contains the following relevant definition:

"Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

[DE 42-1, 19, ¶5].

Amerisure contends that the undisputed facts demonstrate that, pursuant to Section 440.10(1)(b) of the Florida Worker's Compensation Act, Epoch was the "statutory employer" of the Plaintiff in the underlying action and, therefore, both Exclusions 2.d. and 2.e apply.

Section 440.10(1)(b) provides:
> In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

Both parties' statements of undisputed facts document that Epoch entered into a subcontract with Orange & Blue, which entered into a further subcontract with CL&B, which entered into a further subcontract with Sandi, and Plaintiff in the underlying case was injured while performing this subcontracted work for Sandi [DE 42, 3, ¶16, DE 49, 2-4, ¶¶1, 7, 8]. Based upon these undisputed facts, and the application of Section 440.10(1)(b) to these facts, the Court concludes that Plaintiff in the underlying case was a statutory employee of Epoch. As such,

---

[DE 49, 20]. Epoch's potential liability to Plaintiff in the underlying action for Epoch's own negligence was not, however, assumed by Orange & Blue. In fact, Orange & Blue did not agree to indemnify Epoch at all. The only indemnified parties in the Subcontract Agreement were the "Owner, all subsidiary or affiliated companies of Owner, and all employees, stockholders, officers, partners and directors or any of such parties and their respective heirs, executors, administrators, successors and assigns . . . and Owner's lender(s)." [DE 42-3, 13].

Exclusions 2.d. and 2.e. of the Amerisure policy exclude the underlying case against Epoch from coverage. *See, e.g., Florida Insurance Guaranty Association, Inc. v. Revoredo*, 698 So.2d 890 (Fla. App. 3 Dist. 1997), noting that

> "Statutory employees have been treated identically to actual employees in relation to standard employee exclusion clauses. . . .The logic in the exclusion from coverage of both types of employees is simple and compelling: the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees whether or not they are protected by the workers' compensation law."

*Id*. at 892.[4]  Amerisure, therefore, has no duty to defend Epoch in the underlying action, and, having no duty to defend, Amerisure also has no duty to indemnify Epoch.  *See, e.g., Kenneth Cole Productions, Inc.v. Mid-Continent Cas. Co.,* 763 F. Supp.2d 1331 (S.D. Fla. 2010).

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. Plaintiff Amerisure Insurance Company's Motion for Summary Judgment As To Its Complaint for Declaratory Judgment and Epoch's Counterclaim for Declaratory Judgment for Coverage **[DE 41]** is **GRANTED**.  Amerisure Insurance Company has no duty to defend or indemnify Defendant Epoch Properties, Inc. for the claims and damages alleged against it in the lawsuit pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida under Case No.: 50 2008 CA 006953.

2. Defendant Epoch Properties, Inc.'s Dispositive Motion For Summary Judgment and Motion for Stay **[DE 50]** is **DENIED**.

---

[4]Epoch argues that *Revoredo* is distinguishable from the instant case [DE 49, 22-25].  The Court finds these distinguishable facts to be of no import to this Court's application of the quoted principle.

3. A judgment incorporating this ruling shall be entered separately.

4. The Clerk of the Court shall **CLOSE** this case.

5. All pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of December, 2012.

_____
KENNETH A. MARRA
United States District Judge